#23669-a-RWS

**2006 SD 10**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STEVE KRIER,                                         Plaintiff and Appellant,

  v.

DELL RAPIDS TOWNSHIP,                               Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

STEVE KRIER
Sioux Falls, South Dakota                           Pro se appellant.

DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert & Garry
Sioux Falls, South Dakota                           Attorneys for defendant
                                           and appellee.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 7, 2005

OPINION FILED **01/25/06**

#23669

SABERS, Justice

[¶1.]        Steve Krier (Krier) appeals the circuit court's grant of summary judgment to Dell Rapids Township on his claims of nuisance and inverse condemnation.  We affirm.

**Facts**

[¶2.]        In 1980, the Dell Rapids Township (Township) received a section of Highway 115 from the State of South Dakota.  The Township named that section "Garfield Avenue."  At issue in this case is the portion of Highway 115, renamed Garfield Avenue, which runs south from Dell Rapids to South Dakota Highway 115.

[¶3.]        Over the years, Garfield Avenue fell into a state of disrepair.  A portion of the road was surfaced in blacktop, but was badly cracked.  At the point where the blacktop ended, the road consisted of dirt, grass, and sinkholes.  The Township used a gate to block this portion of the road because it believed it was hazardous.

[¶4.]        In 1997, Krier built a house on four acres just south of Dell Rapids, adjacent to Garfield Avenue.  To the north of Krier's property was the portion of Garfield Avenue that was cracked blacktop.  To the south of Krier's property was the portion of Garfield Avenue that was blocked by the gate.  As a result, there was little traffic on the portion of Garfield Avenue that abutted the Krier property.

[¶5.]        In 2001, the Township decided to repair and resurface Garfield Avenue.  Instead of resurfacing Garfield Avenue with asphalt, the Township decided to use gravel.  The road was bladed, gravel was put down, and the road was bladed again.  The entire one mile portion of Garfield Avenue is now a gravel road.

[¶6.]        Krier was upset with the Township because he wanted Garfield Avenue to be a hard surface road.  According to Krier, the gravel made the ruts and potholes worse.  Krier complains of an accumulation of dust and dirt on his property.

[¶7.]        Krier brought suit against the Township alleging (1) that Garfield Avenue has become a nuisance in violation of SDCL 21-10-1, and (2) that the Township was in violation of SDCL 31-13-49 for refusing to return Garfield Avenue to "its original paved surface."  Krier requested damages for loss of enjoyment and use of his property and an order directing the Township to return Garfield Avenue "to a condition that no longer constitutes a nuisance."[1]

[¶8.]        The Township counterclaimed that its actions in maintaining the road were reasonable.  Following discovery, the Township moved for summary judgment, which was granted.

[¶9.]        The circuit court relied on SDCL 21-10-2 in ruling the Township's actions did not constitute a nuisance, and that although the Township had a duty to maintain Garfield Avenue, Krier had no right to dictate the details.

[¶10.]        Krier amended his complaint to state an inverse condemnation claim and requested damages in the amount of $30,000 for loss of value to his property.  Both parties moved for summary judgment.

[¶11.]        The circuit court granted summary judgment for the Township and denied Krier's motion.  The court found no physical invasion of Krier's property

---

1.        Krier amended his complaint to request damages for an alleged incident in which a Township snow plow damaged his mailbox and landscaping.  That matter is not before us on appeal.

occurred and that Krier failed to prove injuries peculiar to his land, not suffered by the public as a whole. The Township moved for taxation of disbursements. The circuit court granted the motion and awarded the Township $657.08 in taxable disbursements. Krier raises the following issues on appeal:

1.     Whether the circuit court erred in granting summary judgment for the Township on the nuisance claim.

2.     Whether the circuit court erred in granting summary judgment for the Township on the inverse condemnation claim.

3.     Whether the circuit court erred in taxing disbursements in favor of the Township.

## Standard of Review

[¶12.]     Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). All reasonable inferences derived from the facts are viewed in the light most favorable to the nonmoving party. Northstream Invs., Inc. v. 1804 Country Store Co., 2005 SD 61, ¶11, 697 NW2d 762, 765 (citing Morgan v. Baldwin, 450 NW2d 783, 785 (SD 1990)). However, the nonmoving party must present facts showing that a genuine and material issue for trial exists. Cromwell v. Rapid City Police Dept., 2001 SD 100, ¶7, 632 NW2d 20, 23. Once we determine that the material facts are undisputed, our review is limited to whether the law was correctly applied. Schulte v. Progressive N. Ins. Co., 2005 SD 75, ¶5, 699 NW2d 437, 438. We will affirm the trial court if there is any legal basis to support its ruling. *Id.* (citing Kobbeman v. Oleson, 1998 SD 20, ¶4, 574 NW2d 633, 635).

[¶13.]   **1.   Whether the circuit court erred in granting summary judgment for the Township on the nuisance claim.**

[¶14.]   Krier argues that by failing to pave Garfield Avenue, the Township is in violation of its duty to maintain it, which is a nuisance.

[¶15.]   Nuisance is defined in SDCL 21-10-1 as:

> [U]nlawfully doing an act, *or omitting to perform a duty*, which act or omission either:
>
> (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
> (2) Offends decency;
> (3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street, or highway;
> (4) In any way renders other persons insecure in life, or in the use of property.

(emphasis added).

[¶16.]   SDCL 31-13-1 provides that "[t]he board of township supervisors shall construct, repair, and maintain all of the secondary roads within the township." The word "shall," creates an affirmative duty on the Township to repair and maintain Garfield Avenue.

[¶17.]   In *Willoughby v. Grim*, we examined SDCL 31-13-1 and held that although a Township can be compelled to maintain secondary roads, courts cannot impose specific standards by which the repairs are to be made. 1998 SD 68, ¶1, 581 NW2d 165, 166.[2]  Because no standards for road repair and maintenance exist in

---

2.   Although *Willoughby* involved an action for mandamus, it applies because Krier's nuisance action is based on the Township's alleged omission to perform a duty.

our laws, "[d]etails for repairing and maintaining secondary roads [ ] remain within the conscientious direction of . . ." the Township.[3] *Id.* ¶10. Krier has no legal right to dictate the manner in which the repairs are made.

[¶18.] The record shows that the Township has fulfilled its duty to maintain Garfield Avenue. The road has been graveled and graded on several occasions. The Township was under no obligation to make the repairs in accord with Krier's demands. The trial court did not err in granting summary judgment on the nuisance claim.

[¶19.] Krier argued in the alternative that the Township's affirmative act of graveling Garfield Avenue constituted a nuisance. However, SDCL 21-10-2 is clear that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." Because the Township was repairing and maintaining Garfield Avenue pursuant to a statutory obligation, its acts do not constitute a nuisance. *See* Hedel-Ostrowski v. City of Spearfish, 2004 SD 55, ¶13, 679 NW2d

---

3.    Krier claims the Township neglected its duty under SDCL 31-13-49. That statute provides:

> In the resolution of necessity it may be provided that the township will pay any portion or all of the cost of resurfacing, rebuilding, or repaving the portion of any street in which pavement has previously been placed or which has been previously constructed within the township.

*Id.* Krier does not argue that the Township has refused to pay for any portion of resurfacing Garfield Avenue. Instead, he argues that the Township is under an obligation to repave it. However, the statute is clear that the Township can "resurfac[e], rebuild[], or repav[e]." *Id.* Thus, Krier's contentions are at odds with the express language of the statute.

491, 497 ("The legislature exempts from the definition of nuisance those things done or maintained under statutory authority").

[¶20.]     **2.     Whether the circuit court erred in granting summary judgment in favor of the Township on Krier's inverse condemnation claim.**

[¶21.]     Krier brought his inverse condemnation claim under Article VI, section 13 of our State Constitution, which provides: "Private property shall not be taken for public use, or damaged, without just compensation which will be determined according to legal procedure established by the Legislature and according to § 6 of this article." Article VI, section 13 of our Constitution differs from the Fifth Amendment of the Federal Constitution in two key respects. First, and although not relevant to the present issue, we impose "public use" requirements that are more strict than the federal baseline. Benson v. State, 2006 SD 8, ¶42, ___ NW2d ___ (citing Ill. Cent. R.R. Co. v. E. Sioux Falls Quarry, 33 SD 63, 144 NW 724 (1913) (adopting the "use by the public" test)). Second, our Constitution requires that the government compensate a property owner not only when a taking has occurred, but also when private property has been "damaged." The Federal Constitution does not contain a "damage" clause. *Compare* SD Const art VI, § 13 *with* US Const amend 5.

[¶22.]     Under the Federal Constitution, a plaintiff must assert one of four types of takings: (1) a *per se* physical taking under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US 419, 102 SCt 3164, 73 LEd2d 868 (1982); (2) a *per se* regulatory taking which deprives a landowner of all economically viable use of his property pursuant to *Lucas v. South Carolina Coastal Council*, 505 US 1003, 1014, 112 SCt 2886, 2895, 120 LEd2d 798 (1992); (3) a regulatory taking under *Penn*

*Central Transportation Co., v. City of New York*, 438 US 104, 98 SCt 2646, 57 LEd2d 641 (1978); or (4) a land-use exaction violating the standards set forth in *Nollan v. California Coastal Commission*, 483 US 825, 831-32, 107 SCt 3141, 3147-49, 97 LEd2d 677 (1987), and *Dolan v. City of Tigard*, 512 US 374, 384, 114 SCt 2309, ___, 129 LEd2d 304 (1994). *Benson*, 2006 SD 8, ¶41, __ NW2d at __ (citing *Lingle v. Chevron USA Inc.*, ___US___, 125 SCt 2074, 2087, 161 LEd2d 876 (2005)).

[¶23.]     Our case law provides that the "damage" clause in our State Constitution affords more rights to our citizens than the Fifth Amendment to the Federal Constitution. *Searle v. City of Lead* examined the history of the damage clause:

> The constitutional provision is unquestionably a wise and just one, and well calculated to protect property owners from injustice and wrong on the part of municipal or other corporations or individuals invested with the privilege of taking private property for public use, and should be given a liberal construction by the courts, in order to make it effectual in the protection of the rights of the citizen. The words "or damaged" were, without doubt, added to the usual provisions contained in earlier constitutions for the purpose of extending the remedy to incidental or consequential injuries to property, not actually taken for public use, in the ordinary acceptation of that term[.]

10 SD 312, 317-18, 73 NW 101, 103 (1897). Thus, the South Dakota Constitution provides an additional theory by which a plaintiff may bring a claim for damages against the state.[4] In *State Highway Commission v. Bloom*, we noted that:

---

4.     The North Dakota Supreme Court recognized that the words "or damaged" affords more protection than the federal constitution. *King v. Stark County*, 67 ND 260, 271 NW 771, 773-74 (1937). By 1937, almost every state had

(continued . . .)

> Under the taking and damaging clause of our constitution . . . it is a basic rule of this jurisdiction governing compensation for consequential damages that where no part of an owner's land is taken but because of the taking and use of other property so located as to cause damage to an owner's land, such damage is compensable if the consequential injury is peculiar to the owner's land and not of a kind suffered by the public as a whole.

77 SD 452, 461, 93 NW2d 572, 577 (1958).  We further noted that "[t]his rule has been applied in a number of South Dakota cases involving a change of street grade to the damage of abutting property not physically invaded."  *Id.* (citing *Searle*, 10 SD 312, 73 NW 101; Whittaker v. City of Deadwood, 12 SD 608, 82 NW 202 (1900)).

[¶24.]      In *Hurley v. State*, we recognized that the consequential damages rule extends beyond the change of street grade cases.  82 SD 156, 161-62, 143 NW2d 722, 725 (1966).  Specifically, we held that under the damage clause "a landowner may claim compensation for the destruction or disturbance of easements of light and air, and of accessibility, or of such other intangible rights as he enjoys in connection with and as incidental to the ownership of the land itself."  *Id.* at 161, 143 NW2d at 725 (citation omitted).  *Hurley* involved the state's creation of a barrier that impaired the plaintiff's right of access to a road abutting their property.  *Id.* at 159, 143 NW2d at 724.  Ultimately, the state was required to compensate the plaintiffs for the obstruction.  *Id.* at 164, 143 NW2d at 726.

[¶25.]      Our precedent involving the damage clause is not entirely consistent.  In *Hyde v. Minnesota D. & P. Railway Co.*, the Court stated that the words "or

---

(. . . continued)
      amended its constitution to include the "or damages" words.  *Id.* at 774 (citing Lewis, Eminent Domain (3d Ed) §§ 363-64).

damaged" did not broaden the effect of our constitutional provision over what it would have been had the word "taken" been used alone. 29 SD 220, 228-29, 136 NW 92, 96 (1912). *Hyde* held that the damages clause did not extend the right of recovery "to include that for any injury for which damages could not have been recovered at common law." *Id.* *Hyde* is a two-to-one plurality opinion that is nearly one hundred years old. It has been impliedly overruled by both *Bloom* and *Hurley*. To the extent that *Hyde* conflicts with *Bloom*, *Hurley*, and the plain language of Article VI, section 13, it is expressly overruled.

[¶26.] A plaintiff can recover under the consequential damages rule if he or she can prove "the consequential injury is peculiar to [their] land and not of a kind suffered by the public as a whole." *Bloom,* 77 SD at 461, 93 NW2d at 577; *see also Hurley*, 82 SD at 162, 143 NW2d at 725. The injury to the plaintiff "must be different in kind and not merely in degree from that experienced by the general public." *Hurley*, 82 SD at 162, 143 NW2d at 726 (citing Hendrickson v. State, 267 Minn 436, 127 NW2d 165 (1964)).

[¶27.] Krier brought this action under the consequential damages theory. He does not argue that the Township changed the grade of Garfield Avenue, or that it blocked his right of access to Garfield Avenue or his property. Indeed, the Township, through its repair of the road and removal of the gate, has actually increased access to Krier's property from the south. Krier's argument is that the dust and gravel from Garfield Avenue continually invades his property and has diminished its value.

[¶28.]    Krier does not claim the injury to his property is unique from that suffered by other landowners, except that he built his home prior to the resurfacing of Garfield Avenue, whereas the other homes were built afterwards.  Thus, Krier contends that only his property has diminished in value as a result of the resurfacing.  Krier is confusing the damages resulting from the injury with the injury.  The injury to Krier's property is the same as the injury to the other properties.  It differs only in amount or degree.  The fact that a plaintiff suffers a higher degree of injury or damages will not entitle him to recovery under the consequential damages rule.[5]  *Hurley*, 82 SD at 163, 143 NW2d at 726.  Krier has failed to produce any evidence of a separate and distinct injury and, as a result, has made no showing the circuit court erred in granting summary judgment for the Township.

[¶29.]    **3.    Whether the circuit court erred in taxing disbursements in favor of the Township.**

[¶30.]    Krier's final argument is that the circuit court erred in taxing disbursements of $657.08 in favor of the Township.  SDCL 15-17-37 provides:

> The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial.  Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts, and other similar expenses and charges.  These

---

5.    The Township invites us to address the extreme burden that would be placed on rural townships if compensation was required every time they graveled a secondary road.  However, we need not address the Township's argument to reach our decision in the present case.

> expenditures are termed "disbursements" and are taxed pursuant to [SDCL] 15-6-54(b).

Krier fails to specify his objections to the taxation of disbursements by the circuit court. Instead, he generally relies on SDCL 15-17-52, which provides that "[t]he court may limit the taxation of disbursements in the interests of justice," and SDCL 15-17-53, which provides that a trial court may disallow taxation of disbursements that would be "oppressive or work a hardship." However, in the absence of specific objections to the taxation of disbursements, there is no showing of error.

[¶31.] The statutes are clear that disbursement awards are within the discretion of the trial court. Nelson v. Nelson Cattle Co., 513 NW2d 900, 906 (SD 1994). Krier has failed to show where the trial court has abused its discretion.

[¶32.] Affirmed.

[¶33.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.