[¶ 30.] KERN, Justice
(dissenting).
[¶ 31.] I agree with the majority that JBE is entitled to have a jury determine just compensation. I disagree, however, with the majority’s view that the State condemned only JBE’s “control of access” to Cliff Avenue. A careful review of the record supports that access to Cliff Avenue was not the only interest affected. First, the declaration of taking and the incorporated resolutions describe JBE’s “control of access o/that portion of Project No. IM 090(80)397 which lies within the West 115.5 feet of Lot 18 and all of Lot 19, except the West 42 feet of said Lot 19.” (Emphasis added.) And the maps included by the State contain a notation, “Elm Ent. 63rd St[.]” A reasonable view of the record, therefore, indicates that the State took more than JBE’s control of access to Cliff Avenue. The declaration of taking refers to JBE’s control of access within both Lots 19 and 18. Lot 18 abuts only 63rd Street. Lot 19 abuts both 63rd Street and Cliff Avenue. On this record, I would not declare as a matter of law what interests the State in fact acquired. The circuit court improperly resolved this case on summary judgment, and an appellate-level interpretation of the record is unwarranted at this stage. Supra ¶ 24 n. 1. The *140 “estate or interest ... as is specified in the declaration” of taking remains to be determined on a more developed record. SDCL 31-19-24.
[¶ 32.] I also cannot join the majority-on this issue because it requires JBE to file a counterclaim or a “formal-condemnation proceeding” upon remand in order for the circuit court to consider whether the expansion of the turn lane effected an independent taking or damaging. According to the majority, JBE “has not argued on appeal that it is entitled to compensation for loss resulting from the State’s expansion of the turn lane.” A review of the posture of this case reveals, however, that the issue whether JBE has a right to compensation for the expansion of the turn lane is before this Court. First, the circuit court directly identified the issue. Second, JBE argues on appeal that it is entitled to have a jury determine compensation for the State’s expansion of the turn lane because, in its view, the turn lane is a factor that legitimately bears upon the calculation of the market value of the property before and after the taking. See JBE Reply Br. 9.
[¶ 33.] Furthermore, to require JBE, upon remand, to assert a counterclaim or file a formal condemnation proceeding is contrary to our analysis in State v. Miller & Walsh, 2016 S.D. 88, 889 N.W.2d 141. In Miller & Walsh, we allowed the landowners the opportunity to prove that the State substantially impaired their access as an independent taking despite that they did not plead an independent taking and did not file a counterclaim alleging the impairment of such right. The majority distinguishes Miller & Walsh because Miller and Walsh argued on appeal that they were entitled to compensation for the closure of the Intersection. It is a distinction without a difference. JBE, on appeal, asserts a right to compensation for the State’s expansion of the turn lane because, just as Miller and Walsh argued, JBE believes a landowner is entitled to compensation for loss caused by the State’s public improvement as a whole. We gave Miller and Walsh the opportunity on remand to establish that the State substantially impaired their access in part because the circuit court wrongly applied Schuler. Here, the circuit court incorrectly applied Richey, and we should allow JBE the opportunity to prove upon remand that the expansion of the turn lane constituted a taking under the law applicable to inverse condemnation without further amendment of its pleadings or by filing an independent inverse condemnation action.[5]
[¶ 34.] In Rupert v. City of Rapid City, we recognized that “where no part of an owner’s land is taken, but because of the taking and use of other property so located as to cause damage to an owner’s land, such damage is compensable[.]” 2013 S.D. 13, ¶ 9, 827 N.W.2d 55, 60-61 (quoting Krier v. Dell Rapids Twp., 2006 S.D. 10, ¶ 23, 709 N.W.2d 841, 847). For JBE to establish a maintainable action, it must prove “an invasion of the land by “water, earth, sand, or other matter or artificial structures placed upon it, so as effectually to destroy or impair its usefulness!]]’ ” Id. ¶ 10 (quoting Searle, 10 S.D. at 316, 73 N.W. at 103). Next, JBE must establish that the injury to its property is peculiar to JBE and is not of a kind suffered by the *141 public as a whole. If the circuit court were to conclude that JBE proved these factors by the greater convincing force of the evidence, JBE would be entitled to have a jury determine just compensation for this claim as well without further amendment of the pleadings.

. An action for compensation for a taking or damaging can be initiated by the State or the landowner. When the landowner initiates the action, it is termed inverse condemnation. A State-initiated action, on the other hand, is an eminent domain proceeding. Here, the State initiated this eminent domain proceeding against JBE. And, under Richey, JBE is entitled to "just compensation based upon the actual situation” existing at the conclusion of the public improvement. See 270 N.W.2d at 51.