**Pamela SUNNARBORG, individually and on behalf of minor H.N., Appellant,**

v.

**Robert HOWARD, et al., Respondents.**

No. C8–98–72.

Court of Appeals of Minnesota.

July 21, 1998.

Review Denied Sept. 22, 1998.

Karen A. Kugler, Jeffrey R. Anderson, Reinhardt & Anderson, St. Paul, for appellant.

Anne T. Johnson, Barry G. Vermeer, Gislason, Dosland, Hunter & Malecki, P.L.L.P., Minnetonka, for respondent.

Considered and decided by PETERSON, P.J., and AMUNDSON and SHUMAKER, JJ.

## OPINION

PETERSON, Judge.

Appellant Pamela Sunnarborg is the guardian ad litem for the minor child, H.N. Sunnarborg brought this action, individually and on behalf of H.N., against Robert Howard and respondent Donald Howard, alleging that Robert Howard had committed sexual battery against H.N. and that Donald Howard had negligently failed to protect H.N. from the sexual battery. This appeal is from a summary judgment in favor of Donald Howard. We affirm.

## FACTS

Donald Howard owns a home in which he resides with his mother, Katherine Howard. In September 1993, Donald Howard's niece, H.N., and her sister, H.R., began staying with Donald Howard and Katherine Howard during the week. Donald Howard testified that the girls stayed with him and his mother because the girls' mother, Shelly Howard, failed to ensure their regular attendance at school.

Donald Howard testified that when H.N. and H.R. stayed at his house, he and his mother made sure they got on the school bus and did their homework. Donald Howard testified that he and his mother also provided meals for the girls, made sure they went to bed at an appropriate time, and disciplined them when necessary.

In late 1993, Robert Howard, Donald Howard's brother and H.N.'s father, began living in Donald Howard's house. Donald Howard testified that when Robert Howard began living in his house, he helped a lot with H.N. and H.R. Donald Howard continued to buy food for H.N. and H.R. after Robert Howard moved in.

In March 1994, Robert Howard was charged with committing criminal sexual conduct against H.N. and another girl. Some of the sexual abuse committed against H.N. occurred in Donald Howard's home in late 1993 and early 1994.

## ISSUE

Did the district court err in concluding that no special relationship existed between Donald Howard and H.N. and, therefore, that Donald Howard did not have a duty to protect H.N. from sexual abuse by her father?

## ANALYSIS

On appeal from a summary judgment, this court must review the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). This court must view the evidence in the light most favorable to the nonmoving party. *Id.*

■ The existence of a duty is an element of a negligence claim. *Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 729 (Minn. 1990).

A person generally has no duty to act for the protection of another person, even if he realizes or should realize that action on his part is necessary. The existence of a legal duty depends on the relationship of the parties and the foreseeability of the risk involved. The existence of a legal duty to protect another person generally presents an issue for the court to decide as a matter of law.

*Donaldson v. Young Women's Christian Ass'n,* 539 N.W.2d 789, 792 (Minn.1995) (citations omitted). This court need not defer to the district court's decision on a legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ "A legal duty to act for the protection of another person arises when a special relationship exists between the parties." *Don-*

*aldson,* 539 N.W.2d at 792. "A custodial parent has a special relationship to a dependent and vulnerable child that gives rise·to duty to protect the child from harm." *Lundman v. McKown,* 530 N.W.2d 807, 820 (Minn. App.1995), *review denied* (Minn. May 31, 1995), *and cert. denied,* 516 U.S. 1092, 1099, 116 S.Ct. 814, 828, 133 L.Ed.2d 759, 770 (1996). A special relationship may arise when a person "accepts responsibility to protect another, although there was no initial duty." *Id.*

■ Generally, when a parent is present, the responsibility to provide for a child's care and safety rests with the parent, and a third party does not stand in a special relationship to the child. *See, e.g., Wren v. Harrison,* 165 Ga.App. 847, 849, 303 S.E.2d 67, 70 (Ga.App. 1983) (when child was on dock under parents' supervision, parents had responsibility for providing for his safety, and social host was not liable for drowning); *Freeze v. Congleton,* 276 N.C. 178, 181, 171 S.E.2d 424, 426 (1970) (property owner does not owe duty to protect child from known danger when child is accompanied by parent or someone to whom the child's custody has been committed by the parent). A parent's obligation to provide for a child's care and welfare

> is not a perfunctory one to be performed only at the voluntary pleasure or whimsical desire of the parent. The responsibility for supervision of such child may be relinquished or obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility. Such parent may not impose the responsibility of supervision of his or her minor child on a third person unless that person accepts the responsibility, and a third person may not assume such responsibility unless the parent grants it.

*Laser v. Wilson,* 58 Md.App. 434, 445, 473 A.2d 523, 528–29 (Md.App.1984).

■ There was evidence that Donald Howard had assumed from H.N.'s mother some responsibility for caring for H.N. during the week. Because H.N.'s mother failed to ensure H.N.'s attendance at school, H.N. stayed at Donald Howard's home during the week. Donald Howard and his mother provided food for H.N., maintained discipline, and also made sure that H.N. got on the school bus, did her homework, and went to bed at an appropriate time. However, no evidence indicates that Donald Howard assumed any duty to protect H.N. from her father. There was no evidence that Robert Howard's parental rights had been legally restricted or terminated. Therefore, once Robert Howard began residing in Donald Howard's home, Donald Howard was in the position of a social host. Although there was evidence that Donald Howard continued to help care for H.N. after Robert Howard moved into his home, there was no evidence that Robert Howard had imposed any responsibility for protecting H.N. on Donald Howard or that Donald Howard had agreed to accept any such responsibility from Robert Howard. Absent any such evidence, when Robert Howard was present, no special relationship existed between Donald Howard and H.N., so Donald Howard cannot be held liable for the sexual abuse of H.N. by Robert Howard.

Relying on *Lundman,* Sunnarborg argues that a special relationship existed between Donald Howard and H.N. even when Robert Howard was present because Donald Howard had assumed responsibility for H.N.'s health and welfare. In *Lundman,* an 11–year–old child, Ian, died from diabetes because the adults responsible for his care failed to obtain necessary medical treatment for him. *Id.* at 814–15. This court concluded that a special relationship existed between Ian and his stepfather based on the stepfather's marriage to Ian's mother, the custodial parent. *Id.* at 820–21. This court also concluded that a special relationship existed between Ian and two individuals whom his mother had hired and paid to provide care to Ian during his illness. *Id.* at 821–23. Here, Donald Howard was not a party to any marital or contractual relationship that would give rise to a special relationship between Donald Howard and H.N.

## DECISION

Because no special relationship existed between Donald Howard and H.N. when Robert Howard was present, the district court

properly granted summary judgment in favor of Donald Howard.

**Affirmed.**