#23773-rev & rem-RWS

**2006 SD 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RAMONA CASILLAS and DELORA
STICKELMAN,                                              Plaintiffs and Appellants,

  v.

TED SCHUBAUER,                                         Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TODD COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

CHARLES ABOUREZK of
Abourezk & Zephier
Rapid City, South Dakota                    Attorneys for plaintiffs
                                                                and appellants.


SARA L. LARSON
MICHAEL M. HICKEY of
Bangs, McCullen, Butler,
  Foye and Simmons
Rapid City, South Dakota                    Attorneys for defendant
                                                                and appellee.

\* \* \* \*

                                                CONSIDERED ON BRIEFS
                                                ON MARCH 20, 2006

                                                OPINION FILED **04/26/06**

#23773

SABERS, Justice

[¶1.] Ramona Casillas (Casillas) and Delora Stickelman (Stickelman) were injured when Casillas' vehicle collided with an eighteen-hundred pound Black Angus bull (the black bull) owned by Ted Schubauer (Schubauer). Casillas and Stickelman brought a negligence action against Schubauer. After discovery, Schubauer filed a motion for summary judgment. The circuit court granted the motion. Casillas and Stickelman appeal. We reverse and remand for trial.

## FACTS

[¶2.] Casillas and Stickelman reside in North Platte, Nebraska. On May 30, 2002, they drove to Mission, South Dakota, to attend the graduation of Casillas' grandson. Later that evening, Casillas and Stickelman left Mission and began traveling south on South Dakota Highway 83 towards North Platte. Stickelman was driving Casillas' vehicle.

[¶3.] At approximately 11:00 p.m., they suddenly came upon the black bull which was standing on the highway. Stickelman attempted to swerve but was unable to avoid hitting the black bull. The vehicle was totally destroyed and Casillas and Stickelman suffered extensive personal injuries.

[¶4.] Sometime between 7:30 and 8:00 the following morning, Schubauer noticed that the black bull was missing from the corral outside of his home. He searched his property and came upon the accident scene where he saw blood on the highway. Schubauer found the black bull lying on the ground. The black bull had skin missing from one of its legs, but was able to walk back to the corral.

-1-

[¶5.] Casillas and Stickelman brought a negligence action against Schubauer seeking to recover damages for the injuries sustained. Schubauer denied any negligence.

[¶6.] Claris Young (Young) submitted an affidavit on behalf of Casillas and Stickelman. Young stated that at approximately 6:30 p.m. on the evening of the accident, she saw the black bull on Highway 83. Specifically, Young stated that several cars had to slow down and swerve to avoid hitting the black bull. Then, while driving home from work, Young witnessed Casillas and Stickelman's accident and assisted them until the paramedics arrived at the scene.

[¶7.] Schubauer testified via deposition. He testified that on the day of the accident he placed the black bull with another bull and some cattle in a small corral. The corral was located near Schubauer's residence. The fence surrounding the corral was an assortment of stockade panels, wood, and barbed wire. Schubauer testified that he and his son diligently maintain the fences and gates and that they were not in a state of disrepair on the day of the accident.

[¶8.] Schubauer did not recall whether he checked on the black bull after it had been put in the corral. He did not find any damaged fence or open gates the following morning. However, this was not the first occasion the black bull escaped from one of Schubauer's corrals. A few years earlier, Schubauer put the black bull and another bull in one of his corrals. The two bulls started fighting and the black bull broke through the fence, but apparently did not reach the highway.

[¶9.] After discovery was complete, Schubauer made a motion for summary judgment. A hearing was held on May 27, 2005. The circuit court granted

Schubauer's motion. The court ruled that there was no direct or circumstantial evidence that the escape of the bull "was occasioned by any acts of negligence" on the part of Schubauer.

[¶10.] Schubauer made a motion requesting the circuit court award disbursements under SDCL 15-17-37. The disbursements requested included fees for computerized legal research. Casillas' counsel objected to the motion, stating, "I have never been able to get [computerized legal research expenses] in any court in South Dakota, because it is not specifically in the statute." The court taxed disbursements in favor of Schubauer in the amount of $905.67, including the computerized legal research expenses.

[¶11.] Casillas and Stickelman raise the following issues:

1.      Whether the circuit court erred in granting summary judgment in favor of Schubauer on the negligence claim.

2.      Whether the doctrine of *res ipsa loquitur* precluded the circuit court from granting summary judgment in favor of Schubauer.

3.      Whether the circuit court erred in taxing disbursements in favor of Schubauer.

**Standard of Review**

[¶12.] "Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Krier v. Dell Rapids Township, 2006 SD 10, ¶12, 709 NW2d 841, 844-45 (citing SDCL 15-6-56(c)). We view all reasonable inferences derived from the facts in the light most favorable to the

nonmoving party. *Id.* The moving party must clearly show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *In re Estate of Shuck v. Perkins County*, 1998 SD 32, ¶6, 577 NW2d 584, 586. "Once we determine that the material facts are undisputed, our review is limited to whether the law was correctly applied." *Krier,* 2006 SD 10, ¶12, 709 NW2d at 845 (citing *Schulte v. Progressive N. Ins. Co.*, 2005 SD 75, ¶5, 699 NW2d 437, 438).

### 1. Summary Judgment

[¶13.] Summary judgment is generally not feasible in negligence cases. *Satterlee v. Johnson*, 526 NW2d 256, 258 (SD 1995); *Zeeb v. Handel*, 401 NW2d 536, 537 (SD 1987); *Lalley v. Safway Steel Scaffolds, Inc.*, 364 NW2d 139 (SD 1985). "It is only when the evidence is such that reasonable [persons] can draw but one conclusion from the facts and inferences that they become a matter of law and this occurs rarely." *Id.* (quoting *Lamp v. First Nat.l Bank of Garretson*, 496 NW2d 581 (SD 1993)); *see also* *Wilson v. Great N. Railway Co.*, 83 SD 207, 157 NW2d 19, 22 (1968) (noting that summary judgment should not be granted on claims of contributory negligence except in "extraordinary, unusual, or rare case[s] where the facts are conceded or demonstrated beyond reasonable question and show a right to summary judgment with such clarity as to leave no room for controversy"). The burden remains with the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *State Dept. Revenue v. Thiewes*, 448 NW2d 1, 2 (SD 1989).

[¶14.] Even though summary judgment is rare in negligence cases, we have held that the determination of whether a duty exists is a question of law for the

courts. Bordeaux v. Shannon County Schools, 2005 SD 117, ¶11, 707 NW2d 123, 126. The inquiry involves whether "a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." *Estate of Shuck*, 1998 SD 32, ¶8, 577 NW2d at 586. "Landowners have a duty of care regarding their roaming animals." Atkins v. Stratmeyer, 1999 SD 131, ¶23, 600 NW2d 891, 898. Once the duty is determined, whether a breach of that duty occurred is for the finder of fact, not this Court.

[¶15.]     In personal injury cases arising out of collisions between vehicles and domestic animals, this Court has explained:

> At common law an owner of a domestic animal is under no legal obligation to restrain it from being at large on the highway unattended, and he is not liable for damages for an injury resulting from its being so at large unless he has knowledge of vicious propensities of the animal or unless he *should reasonably have anticipated that injury would result from its being so at large on the highway.*

*Id.* (citing Eixenberger v. Belle Fourche Livestock Exchange, 75 SD 1, 5, 58 NW2d 235, 237 (1953) (emphasis in original)). In the absence of a specific statute, the rule set forth in *Eixenberger* and its progeny continues to control these types of cases. Originally, the rule only applied to cattle that were permitted to roam at large. *Id*. However, the rule has subsequently been applied to cases involving negligent maintenance of fences or other forms of confinement. Pexa v. Clark, 85 SD 37, 40, 176 NW2d 497, 498 (1970); *Zeeb,* 401 NW2d at 537; *Atkins,* 1999 SD 131, 600 NW2d 891.

[¶16.]     In this case, the inquiry is whether the owner could have reasonably anticipated that the animal would stray onto the highway.   In answering this inquiry, we look to

> [t]he facts of [the] case and consider the character of the road, the kind of traffic thereon, the time of day, and all other pertinent facts and the surrounding conditions to determine whether the defendant should have reasonably anticipated the danger.

*Atkins*, 1999 SD 131, ¶23, 600 NW2d at 898 (citing *Estate of Shuck*, 1998 SD 32, at ¶12, 577 NW2d at 587).   This Court has held that the inquiry is a factual one and should be left to the jury. *Id.**

[¶17.]     In summary, landowners have a duty of care regarding their animals. *Id.* Whether a breach of that duty occurred depends upon whether the landowner could have reasonably anticipated the danger in light of all the facts and circumstances.  This inquiry is a factual one and should be decided by the jury.

[¶18.]     The determination is whether Schubauer should have reasonably anticipated that his black bull would stray onto Highway 83.  All facts and reasonable inferences must be viewed in the light most favorable to Casillas and Stickelman.  The burden is on Schubauer to clearly show no genuine issue of material fact exists in this regard.  *Thiewes*, 448 NW2d at 2.  "A surmise that

---

*     *Estate of Shuck* is the only case in which this Court has upheld the grant of summary judgment on this issue.  In doing so, the Court noted that the defendant's cattle roamed at large in a remote area that was surrounded by infrequently traveled, gravel roads.  1998 SD 32, ¶¶14, 15, 577 NW2d at 587-88.  Additionally, there were cattle guards and a sign that put motorists on notice that cattle were likely to roam across the road that runs through the defendant's grazing land.  Because of those unique facts, this Court distinguished its holdings in *Pexa* and *Eixenberger*.  *Id.* n6.

[Casillas and Stickelman] will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them." *See id.*

[¶19.]     Schubauer did not allow his livestock to roam at large. His property is enclosed by fence. Casillas and Stickelman did not present facts indicating that Schubauer negligently maintained his fence. Nor do they set forth facts indicating that Schubauer left the fence gates open on the day of the accident.

[¶20.]     Schubauer does admit, however, that this was not the first time the black bull escaped from a corral. On a prior occasion, Schubauer confined the black bull and another bull in close quarters. The two bulls started fighting and the black bull was able to break through the fence. Schubauer testified in regards to bulls and their propensity to challenge one another as follows:

> Q:     Now you said you had that problem at one time with that big bull and the little bull; do bulls fight often?
>
> A:     I don't know if you call it fighting or playing, but they—boys will be boys I guess. I don't know what you call it.
>
> Q:     They challenge each other, right, or how would you describe it?
>
> A:     I guess that's what you would say. I don't know. They just butt heads and the bigger one usually wins and pushes the little one away, and if he's too much bigger the little one runs away.

[¶21.]     On the day of the accident, Schubauer put the black bull, another bull, and some cattle in the corral. He does not recall checking on the bulls that afternoon or evening despite the fact that the corral can be seen from his house. The black bull was observed on the highway by 6:30 p.m. The accident occurred at 11:00 p.m. The black bull was not found until 7:30 or 8:00 the following morning.

[¶22.]     Under these circumstances, a genuine issue of material fact exists as to whether Schubauer could have reasonably anticipated the black bull would escape and stray onto Highway 83.  Schubauer knew that bulls had a propensity to challenge one another.  He also knew the black bull escaped from a corral when confined with another bull on a prior occasion.  Despite the fact that the bulls were confined and Schubauer's home was near a major highway, he did not check on the bulls until the following morning.  Viewing these facts and inferences in the light most favorable to Casillas and Stickelman, a jury should determine whether Schubauer could have reasonably anticipated the black bull's escape and the likelihood of an accident.

[¶23.]     It was Schubauer's burden to show the absence of a genuine issue of material fact as to whether he breached his duty to Casillas and Stickelman.  He has failed to meet his burden.  Therefore, we reverse and remand for a jury trial.

## 2.  *Res Ipsa Loquitur*

[¶24.]     The essential elements to warrant application of the doctrine of *res ipsa loquitur* are:  (1) the instrumentality which caused the injury must have been under the full management and control of the defendant or his servants; (2) the accident must be such that, according to knowledge and experience, does not happen if those having management or control had not been negligent; and (3) the plaintiff's injury must have resulted from the accident.  Wuest v. McKennan Hospital, 2000 SD 151, ¶18, 619 NW2d 682, 688 (citing Fleege v. Cimpl, 305 NW2d 409 (SD 1981)).  "Also, the doctrine of *res ipsa loquitur* is to be utilized sparingly

and only when the facts and demands of justice make its application essential." *Id.*
(citing Shipley v. City of Spearfish, 89 SD 559, 235 NW2d 911 (1975)).

[¶25.]     There is a split of authority as to whether and to what extent the
doctrine of *res ipsa loquitur* applies to cases involving collisions between motorists
and domestic animals.  *See* 29 ALR 4th 431, *Collision With Domestic Animal,* §§
8(a),(b) (listing cases).  *Res ipsa loquitur* is primarily a rule of evidence.  Roster v.
Inter-State Power Co., 58 SD 521, 237 NW 738, 741 (1931).  Because the circuit
court granted summary judgment, it did not have the opportunity to rule on the
doctrine's applicability to the present case.  Therefore, it is for the circuit court to
determine whether Casillas and Stickelman are entitled to an instruction on *res
ipsa loquitur* in light of the substantive law and the evidence at trial.

### 3.  Taxation of Disbursements

[¶26.]     The circuit court awarded Schubauer $905.67 in disbursements
pursuant to SDCL 15-17-37, which provides:

> The prevailing party in a civil action or special proceeding may
> recover expenditures necessarily incurred in gathering and
> procuring evidence or bringing the matter to trial.  Such
> expenditures include costs of telephonic hearings, costs of
> telephoto or fax charges, fees of witnesses, interpreters,
> translators, officers, printers, service of process, filing, expenses
> from telephone calls, copying, costs of original and copies of
> transcripts and reporter's attendance fees, court appointed
> experts, and other similar expenses and charges.  These
> expenditures are termed "disbursements" and are taxed
> pursuant to § 15-6-54(d).

Because we have concluded that the circuit court erred in granting summary
judgment in favor of Schubauer, we vacate the circuit court's taxation of

disbursements in favor of Schubauer.  However, we specifically address whether legal research fees can be awarded under SDCL 15-17-37.

[¶27.]     We have held that "only those expenses specifically authorized by statute may be taxed as disbursements, and although the trial court has some discretion, it must use cautious restraint within the statutory specifications." Behrens v. Wedmore, 2005 SD 79, ¶69, 698 NW2d 555, 581 (quoting Lewis v. Asleen, 2001 SD 131, ¶10, 635 NW2d 744, 747).  Schubauer does not argue that computerized legal research fees are expressly authorized by the statute.  Instead, he argues that computerized legal research fees fall under "other similar expenses and charges."  SDCL 15-17-37.

[¶28.]     In *City of Aberdeen v. Rich*, 2003 SD 26, ¶27, 658 NW2d 775, 782, we noted that "this Court has been extremely hesitant to allow disbursements for [the] other similar expenses and charges" provision of SDCL 15-17-37.  In this case, we follow the strict construction of SDCL 15-17-37.  The depth and detail of legal research is dictated by the complexity of the case and the judgment of the individual attorney.  More importantly, the expense for non-computerized legal research is not taxable and is not within "other similar expenses and charges."  We hold that computerized legal research fees cannot be taxed as disbursements under SDCL 15-17-37.

[¶29.]     Reversed and remanded.

[¶30.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.