#24464-a-JKM
**2008 SD 8**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ALEX ANDRUSHCHENKO and NATALIYA
ANDRUSHCHENKO, as Guardian
Ad Litem of D.A., a Minor, and
NATALIYA ANDRUSHCHENKO, Individually,     Plaintiffs and Appellants,
  v.
IVAN SILCHUK and LYUBA SILCHUK,
METZGER CONSTRUCTION, INC. and
M & M PLUMBING-HVAC, L.L.C.,     Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
\* \* \* \*
HONORABLE STUART L. TIEDE
Judge
\* \* \* \*

ROLLYN H. SAMP of
Samp Law Firm     Attorneys for plaintiffs
Sioux Falls, South Dakota     and appellants.

WILLIAM C. GARRY
SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert & Garry, LLP     Attorneys for appellees
Sioux Falls, South Dakota     Silchuk.

ROY A. WISE of
Richardson, Wyly, Wise, Sauck,
 & Hieb, LLP     Attorneys for appellee
Aberdeen, South Dakota     Metzger Construction.

MARK D. O'LEARY     Attorney for appellee
Sioux Falls, South Dakota     M & M Plumbing.

\* \* \* \*

ARGUED ON OCTOBER 3, 2007

OPINION FILED **01/30/08**

#24464

MEIERHENRY, Justice

[¶1.] Alex and Nataliya Andrushchenko (Andrushchenkos), as guardians ad litem of their minor child D.A., and Nataliya Andrushchenko, individually, brought suit against Ivan and Lyuba Silchuk (Silchuks), Metzger Construction, Inc., and M & M Plumbing-HVAC, L.L.C. (M & M) (collectively defendants) for injuries that D.A. sustained from scalding water in the Silchuks' bathtub. The circuit court granted summary judgment to the defendants. Andrushchenkos appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶2.] The circuit court was presented with certain undisputed facts. On December 29, 2002, Silchuks invited Andrushchenkos and their three-year-old son, D.A., over to their home for lunch. Early in the visit, D.A. turned on the faucets and flooded the main floor bathroom. Later, the Silchuk children and D.A. went upstairs to play. Mrs. Silchuk went upstairs and saw that D.A. was not playing with the other children. He was playing by himself in another area of the room. She closed the door to the bedroom where the baby was sleeping and rejoined the adults on the main floor. The baby was sleeping in the master bedroom, with access to the master bathroom, which had a whirlpool tub. She did not bring D.A. downstairs with her nor report to his parents that he was playing alone upstairs. Shortly thereafter, the adults heard D.A. scream. They ran upstairs and found him in the bathtub in the master bathroom. He had evidently opened the door of the baby's room and entered the master bathroom. He turned on the hot water and placed toys and other objects in the bathtub. He then either intentionally climbed or accidentally slipped into the bathtub. The hot water caused severe burns. The

-1-

water in the tub was approximately 160°F. His burns required extensive treatment, including plastic surgery.

[¶3.]     Silchuks' water heaters were installed as part of the construction of their home a few months prior to the incident. Metzger Construction, as the general contractor, hired M & M to install the water heaters. M & M claimed it set the thermostats at 125° F.

[¶4.]     Andrushchenkos alleged that the defendants were negligent. They claim that Silchuks owed D.A. the duty of ordinary and reasonable care because of his status as an invitee and because of a gratuitous duty undertaken by Mrs. Silchuk to protect D.A.. They claim that Metzger had a duty to set the water heater thermostats at 120° F. as established by the 2003 Uniform Plumbing Code and the water heater manuals and that Metzger's duty extends to third parties such as D.A.. They also claim that M & M had a duty to warn Silchuks that the thermostat setting had a high risk of scalding.

[¶5.]     Silchuks, Metzger and M & M filed motions for summary judgment after discovery. Andrushchenkos filed affidavits in opposition to the summary judgment motion. Silchuks and Metzger objected to three of Andrushchenkos' opposing affidavits: (1) police reports of the investigation of the incident, (2) a water heater use and care manual and (3) a copy of the 2003 Uniform Building Code. The circuit court sustained the objections to the three affidavits and their attachments because of lack of foundation or relevancy.

[¶6.]     The circuit court entered summary judgment for all defendants. The court determined from the undisputed evidence that Andrushchenkos had not

established that the defendants owed a duty to the injured child. As to defendants Silchuks, the circuit court determined that as a social guest D.A. had the status of licensee. Thus, Silchuks only owed a duty to warn of or make safe concealed dangerous conditions known to them at the time D.A. sustained his injuries. The court determined that Andrushchenkos had not produced sufficient evidence to demonstrate that Silchuks knew of any alleged dangerous condition. Similarly, the court rejected Andrushchenkos' gratuitous duty theory. The court based its determination on evidence that Ms. Andrushchenko admitted in her deposition that she had not relinquished her responsibility to supervise D.A. while in Andrushchenkos' home. The court also found that Andrushchenkos had not presented evidence that Silchuks had agreed to assume the responsibility to supervise D.A.

[¶7.]     As to Metzger and M & M, the circuit court determined that Andrushchenkos had not presented evidence that they had violated any ordinance, statute or industry standard, which would have created a duty to D.A. and that no duty arose in common law. Andrushchenkos appeal and raise the following issues:

### ISSUES

1. Whether the circuit court erred by not admitting exhibits offered in opposition to the summary judgment motion.

2. Whether the circuit court erred in granting summary judgment for defendants.

### STANDARD OF REVIEW

[¶8.]     "When reviewing a grant of summary judgment, 'we must determine whether the moving party demonstrated the absence of any genuine issue of

-3-

material fact and showed entitlement to judgment on the merits as a matter of law.'" Kling v. Stern, 2007 SD 51, ¶5, 733 NW2d 615, 617. "All facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party." Hendrix v. Schulte, 2007 SD 73, ¶6, 736 NW2d 845, 847. However, the nonmoving party must "present more than [u]nsupported conclusions and speculative statements, [which] do not raise a genuine issue of fact." Burley v. Kytec Innovative Sports Equipment, Inc., 2007 SD 82, ¶34, 737 NW2d 397, 408 (quoting Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co., Inc., 511 NW2d 567, 569 (SD 1994)). "Summary judgment is generally not feasible in negligence cases." Satterlee v. Johnson, 526 NW2d 256, 258 (SD 1995). "The existence of a duty is a question of law that is reviewed de novo." State Auto Ins. Co. v. BNC, 2005 SD 89, ¶20, 702 NW2d 379, 386 (citation omitted).

[¶9.] Evidentiary rulings are reviewed under an abuse of discretion standard. Looks Twice v. Whidby, 569 NW2d 459, 460 (SD 1997).

## ANALYSIS

### 1. Whether the circuit court erred by not admitting exhibits offered in opposition to the summary judgment motion.

[¶10.] Andrushchenkos attempted to offer copies of police reports prepared by the Sioux Falls Police Department and obtained by subpoena. Andrushchenkos submitted the exhibits to show that the police investigation demonstrated that the water temperature was 160° F. at the time of the scalding. The accompanying affidavit was from Andrushchenkos' attorney, not from the custodian of the records or from the officers who made the reports. The court refused to consider the reports because of lack of foundation.

[¶11.]	We have consistently held that the party submitting an affidavit has the duty to lay the proper foundation to establish admissibility. An affidavit from the custodian of the records or other qualified witness is necessary to establish foundation. *See* DuBray v. South Dakota Dept. of Social Services, 2004 SD 130, ¶15, 690 NW2d 657 (holding it is the burden of the proponent to establish trustworthiness and admissibility). The proper foundation for business records in a summary judgment proceeding is an affidavit from a custodian of the records or other qualified witness. In this case, the only evidence of admissibility was the attorney's affidavit. The general rule is that attorney affidavits should not be used unless the matter is uncontested or a mere formality. We have explained use of an attorney's affidavit as follows:

> [w]hen submitting affidavits in support of summary judgment motions, an attorney's affidavit is governed by the same rules of admissibility in regard to personal knowledge and competency . . . . Furthermore, an attorney's affidavit should not be utilized for summary judgment decisions unless the testimony therefrom would be admissible at trial. . . . .the affidavits must not . . . give evidence regarding matters that would be questions of fact." Maryland Cas. Co. v. Delzer, 283 NW2d 244, 249 (SD 1979).

*Id.*

[¶12.]	Clearly, Andrushchenkos' attorney was not the custodian of the police reports, and the court did not abuse its discretion by sustaining the objection. Additionally, none of the defendants contested that the water temperature was high enough to scald. Regardless of the ruling, the court indicated it considered the evidence of the water temperature because it came in through other admissible and relevant sources. Thus, for purposes of the summary judgment ruling, the court considered the evidence in the light most favorable to Andrushchenkos. The court

took, as true, the fact that the water out of the tap was 160° F. and that the water heater thermostats were on the highest setting.

[¶13.]    Andrushchenkos also offered evidence that the proper thermostat setting should have been lower than set by M & M.  The evidence was in the form of a manual Andrushchenkos' attorney received from the water heater manufacturer, Rheem, after a phone call to their service department.  The attorney's affidavit included the following:

> 3.  On October 17, 2005, I made a phone call to Rheem Manufacturing's Technical Support Line at 1-800-432-8273.
> 4. I spoke to Mr. Brock Adams, an employee and technical support operator for Rheem Manufacturing.
> 5. Rheem manufacturing manufactures Richmond Water Heaters. . . .
> 6. I gave Mr. Adams the model number of Defendant Silchuck's water heater as listed in the Police Report of Officer Spaeth.
> 7. Mr. Adams searched his database and sent to me via e-mail .PDF copies of the Use and Care Manuals for Defendant Silchuk's water heater model for the years 1992 (sent as Ap10960-i.pdf), 2000 (sent as Apl0960-10.pdf), and 2002 (sent as Ap10960-11.pdf).

Copies of the manuals and Mr. Adams's e-mail were attached to the Affidavit as exhibits.

[¶14.]    The use and care manual provided general safety precautions concerning the water temperature settings and warned that water temperatures over 125° F. could instantly cause severe burns or death from scalds.  The manual also indicated that at the highest setting the water temperature would reach 160° F.  Silchuks and Metzger objected arguing that the manual was irrelevant because the Silchuks' water heaters were different models than depicted in the manuals,

and that the manuals contained inadmissible hearsay and lacked proper foundation.

[¶15.] The circuit court ruled that the manuals lacked proper foundation. The court did not abuse its discretion in making that ruling. The attorney's affidavit concerning who the attorney talked to and how the attorney retrieved the manual involved questions of fact, especially since defendants challenged whether this was the manual for the water heaters installed in Silchucks' home. Using an attorney's affidavit in this manner also runs the risk of the attorney becoming a fact witness in the case – clearly not allowed under the code of ethics. South Dakota Rules of Professional Responsibility 3.7(a)(1) ("a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue"). *See also* Maryland Cas. Co. v. Delzer, 283 NW2d 244, 249 (SD 1979) ("an attorney's affidavit should not be utilized for summary judgment decisions unless the testimony therefrom would be admissible at trial.") (citation omitted).

[¶16.] On appeal, the attorneys for Andrushchenkos argue that the use and care manuals were self-authenticating and should have been admitted under SDCL 19-17-1(4) & (9). They claim each manual was self-authenticating because of its title, its reference to contact information at the same address as the manufacturer, its appearance, contents, substance, and internal patterns coupled with being directed to the consuming public and not litigation. They claim the manual set the standard by which Metzger and M & M were to install the water heaters and adjust the thermostats.

[¶17.]　　　　SDCL 19-17-1(4) & (9) set forth the requirements for a document to be self-authenticating:

> 　　　　The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.　By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this section:
> . . .
> (4)　　Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
> . . .
>
> (9)　　Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

SDCL 19-17-1(4) and (9) are identical to Federal Rules of Evidence 901(b)(4) and (9).　A review of the manual reveals nothing in its appearance or content that makes it self-authenticating.　*In State v. Hatten*, this Court stated that a proponent of self-authenticating evidence "must make a prima facia showing that evidence is what it purports to be."　312 NW2d 469, 469-70 (SD 1981).　In this case, an examination of the manual makes no connection between the manual and the water heaters installed in the Silchuks' home.　The names of the manufacturer and model number are absent from the manual.　Thus, the appearance and contents of the manual are insufficient to support a finding that it is the manual for the water heaters in Silchuks' home under SDCL 19-17-1(4).

[¶18.]　　　　SDCL 19-17-1(9) also does not apply to the use and care manual.　The Federal Rule Committee Notes explain the application of rule 901:　"Example (9) is designed for situations in which the accuracy of a result is dependent upon a

process or system which produces it. X rays afford a familiar instance. Among more recent developments is the computer . . . ." Fed. R. Evid. 901, Advisory Committee Notes. Andrushchenkos argued the water heater manual established the relationship between water temperatures and scalds by way of a table attributed to the Shriners Burn Institute. The circuit court found the table lacked foundation. We agree. The table does not constitute the type of process referred to in SDCL 19-17-1(9).

[¶19.] Andrushchenkos also offered evidence of the 2003 version of the Uniform Plumbing Code, which they claimed set the water temperature standard at 120° F. The plumber who installed the water heaters testified that he set the water heaters at 125° F. However, Andrushchenkos admitted that the 2003 version of the Code was not in effect at the time the water heaters were installed. *See* Zens v. Chicago, Milwaukee, St. Paul and Pacific R. Co., 479 NW2d 155, 158 (SD 1991) (recognizing that guidelines adopted after an alleged act of negligence have no tendency to prove the applicable standard of care). Thus, the 2003 Uniform Plumbing Code, which had not been adopted by the City of Sioux Falls at the time of D.A.'s injuries, was not relevant and had no tendency to establish a duty on the part of M & M to set the water heater thermostats at a lower temperature.

[¶20.] The circuit court did not abuse its discretion when it refused to consider the police reports, the water heater manual and the 2003 Uniform Plumbing Code because Andrushchenkos failed to lay the proper foundation for admissibility or to establish the relevance of the records.

**2. Whether the circuit court erred in granting summary judgment because material facts were in dispute that required resolution by a jury.**

[¶21.] "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Fisher Sand & Gravel Co. v. South Dakota Dept. of Trans., 1997 SD 8, ¶12, 558 NW2d 864, 867. "A duty can be created by statute or common law." *Id.* Typically, existence of a duty is a question for the court to resolve. *Hendrix,* 2007 SD 73, ¶8, 736 NW2d at 847 (citing Erickson v. Lavielle, 368 NW2d 624 (SD 1985)). The question involves "whether a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." Casillas v. Schubauer, 2006 SD 42, ¶14, 714 NW2d 84, 88.

*Summary Judgment as to Silchucks*

    *(a)    Duty to Social Guests as Licensees*

[¶22.] In our prior cases, we have retained the common law classifications of trespasser, licensee, and invitee in determining landowner liability. *See* Musch v. H-D Electric Cooperative, Inc.*,* 460 NW2d 149, 150 (SD 1990).[1] The majority of courts that retain the common law distinctions classify social guests as licensees. *See* Restatement (Second) Torts § 330, 332. The general duty owed to licensees is "to warn of concealed, dangerous conditions known to the landowner." Luke v.

---

1.    Many states have abrogated these classifications and have adopted a standard of "reasonable care under the circumstances" for all possessors of property. *See Musch,* 460 NW2d at 150. The parties have not requested we reconsider our prior rulings or if SDCL 20-9-1 abrogated the common law classifications and imposes a duty of ordinary care in all situations. The issue was neither briefed nor argued to the Court.

Deal, 2005 SD 6, ¶15, 692 NW2d 165, 169. The rationale for applying a lower standard of care to social guests versus business invitees is that the social guest is invited to the owner's land as a favor and has no reasonable expectation that the owner will make the land safer for the social guest than the owner does for himself. The Restatement (Second) of Torts § 330 defines licensee as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent."

[¶23.]     Thus, Silchuks had a duty to warn of any known concealed, dangerous conditions. Silchuks' duty depends on whether they knew of the dangerous condition, and whether a reasonable person would have appreciated the danger the water temperature posed. In a summary judgment proceeding, the moving party has the burden of demonstrating the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. The evidence must be viewed in the light most favorable to Andrushchenkos. As the nonmoving party, Andrushchenkos must come forward with sufficient evidence, constituting more than mere conjecture, that there were genuine issues of material fact. *See Burley*, 2007 SD 82, ¶34, 737 NW2d at 408. Here, Andrushchenkos failed to provide any affirmative evidence that the Silchuks knew the temperature of the water was excessively hot or that it presented a scalding danger. Andrushchenkos did not dispute that M & M set the thermostats and they were not tampered with after that. We need not determine if the temperature of the water met the requirements of a hidden danger because the facts, viewed in the light most favorable to Andrushchenkos, did not establish that Silchuks knew the water temperature presented a danger about which they had a duty to warn social guests.

*(b) Undertaking of Special Gratuitous Duty*

[¶24.]      South Dakota recognizes the common law doctrine of gratuitous duty.

State Auto Ins. Co. v. BNC, 2005 SD 89, 702 NW2d 379.  The common law

gratuitous duty rule is defined in Restatement (Second) of Torts, § 323, as adopted

by this Court:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if,
>
> (a)   his failure to exercise such care increases the risk of such harm, or
>
> (b)   the harm is suffered because of the other's reliance upon the undertaking

The facts, viewed in the light most favorable to Andrushchenkos, do not support the

implied or express undertaking of a gratuitous duty to be responsible for the care of

D.A. while he was upstairs in the Silchuks' home.  The Andrushchenkos never

expressly or impliedly relinquished their obligation to supervise D.A..  *See*

Sunnarborg v. Howard, 581 NW2d 397, 399 (MinnApp 1998) ("the responsibility for

supervision of such child may be relinquished or obtained only upon mutual

consent, express or implied, by the one legally charged with the care of the child and

by the one assuming the responsibility").

[¶25.]      The duty of the Silchuks to protect D.A. and to warn of known hidden

dangers is properly characterized as arising from D.A.'s status on Silchuks' property

as a licensee.  No additional duty arose under the facts of this case.  D.A.'s parents

were present during the entire visit and were primarily responsible for the care and

supervision of the child.  At no time had they relinquished their responsibility.  *See*

*Sunnarborg,,* 581 NW2d at 398-99 ("Generally, when a parent is present, the responsibility to provide for a child's care and safety rests with the parent, and a third party does not stand in a special relationship to the child."); OL v. RL, 62 SW3d 469, 475 (MoAppWD 2001) (it is the "acceptance of the custody and control of a minor child [that] creates a relationship sufficient to support a duty of care.").

[¶26.]     The circuit court did not err in granting summary judgment for Silchuks on the gratuitous duty claim.

*Summary Judgment as to Metzger and M & M*

[¶27.]     Andrushchenkos argue the 2000 Uniform Plumbing Code, adopted by the city of Sioux Falls, established a duty on the part of both Metzger and M & M. However, the 2000 Code contains no language that would give rise to a duty not to set a water heater thermostat above 120º F.  The 2000 Code merely provided that water heaters should not be set above a maximum temperature of 210º F. Andrushchenkos only other proffered evidence that Metzger and M & M had a duty not to set the thermostats above 120º F. was the water heater use and care manual, which was not admitted into evidence.  Thus, Andrushchenkos failed to provide evidence of a statutory or common law duty to set the hot water heater thermostats at or below 120º F.

[¶28.]     Based upon the evidence, the circuit court did not err in determining that Andrushchenkos failed to establish a duty.  Summary judgment in favor of Metzger and M & M was proper.

[¶29.]     Affirmed.

[¶30.]    GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶31.]    SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶32.]    I dissent solely on the issue whether there are genuine issues of material fact in relation to the negligence of Lyuba Silchuk.

[¶33.]    The negligence of Lyuba must be viewed directly and not in comparison to that of D.A.'s mother or father.  It is obvious that D.A.'s mother and father were negligent in permitting D.A., an aggressive three-year-old boy, to play by himself for an extended period of time on a separate floor of the house, especially knowing that he liked to turn on water faucets to the point of flooding on a prior occasion.

[¶34.]    Lyuba was not aware of D.A.'s propensity to turn on faucets because D.A.'s mother did not tell her until later at the hospital.  However, Lyuba was aware that D.A. was playing by himself on a separate floor of the house for an extended period of time.  She knew he was an aggressive three-year-old boy because he had done some damage in her house and she had warned his mother that she would be responsible for any further damage.  Lyuba was also aware that D.A.'s mother ignored her warning and left D.A. to play by himself on a separate floor.  To an aggressive three-year-old boy, everything is an attractive nuisance, especially if he is left alone on a separate floor for an extended period of time.

[¶35.]    All of these facts present genuine issues of material fact as to whether Lyuba was directly negligent to D.A.  That Lyuba would be entitled to contribution from D.A.'s mother and father is immaterial to this lawsuit.  That may be the subject of another lawsuit.  In addition, the relationship between Lyuba and D.A. was such that the law will impose upon her a legal obligation of reasonable conduct for the benefit of D.A.  *See* Casillas v. Schubauer, 2006 SD 42, 714 NW2d 84 (defendant could have reasonably anticipated his bull would stray onto the highway).  Here, D.A., a three-year-old, is unlikely to be negligent in the eyes of the law, *see* Doyen v. Lamb, 75 SD 77, 79, 59 NW2d 550, 551 (1953), and is entitled to have a jury determine whether these genuine issues of material fact give rise to liability for negligence on the part of Lyuba.

[¶36.]    The question here is not whether a homeowner is liable to a three-year-old boy when the negligence of the boy's mother is greater than that of the homeowner.  The question here is whether a homeowner is liable to a three-year-old boy when her negligence may have contributed to the boy's injuries.  Specifically, under *Casillas* and these circumstances, the question is whether Lyuba's conduct was reasonable in relation to D.A.  Therefore, summary judgment was premature and improperly granted under these circumstances.  This case should be reversed and remanded for trial on this issue.